UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MAURICE HONOR | CIVIL ACTION |
| VERSUS | NO.  23-1362 |
| TRAVIS DAY, WARDEN | SECTION "A" (4) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. §§ 636(b)(1)(B)–(C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record,[1] the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[2]

## I.    Factual Background

The petitioner, Maurice Honor ("Honor"), is a convicted inmate incarcerated in the Rayburn Correctional Center in Angie, Louisiana.  On February 17, 2016, Honor was charged in Ascension Parish with armed robbery and armed robbery with the use of a firearm in violation of La Rev. Stat. §§ 14:64 and 14:64.3.[3]  Honor entered a plea of not guilty in the case.[4]  On October 11, 2017, the bill of information was amended as to count one to charge Honor with first degree

---

[1] The State electronically filed the state court record at ECF No. 12, 12-1, 12-2, 12-3, 12-4, 12-5, 12-6, 12-7, 12-8, 12-9, 12-10, 12-11, 12-12.

[2] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[3] ECF No. 12-1 at 28, Bill of Information, 2/17/16.

[4] *Id.* at 12-1, Minute Entry, 3/14/16.

robbery in violation of La. Rev. Stat. § 14:64.1.[5]  The State dismissed the charge enhancing the sentence for use of a firearm.[6]

The record reflects that on January 17, 2016, at approximately 6:00 a.m., as Keyania Keyes, the manager of Big River Food & Fuel in Gramercy, was opening the store, a white female came inside and asked where the restroom was located.[7]  According to Keyes, the female must have arrived in a white sedan, which was parked near the gasoline pumps.  The woman left the store immediately after exiting the restroom.

Soon thereafter, Keyes, who was in her office, heard the front door chime.  When Keyes exited her office to greet the customer, a man with deep voice and wearing a dark jacket with a hood, dark pants, dark-colored gloves, and a black mask over his face came straight at her. According to Keyes, the man had what she believed to be a real gun in his hand.  The man grabbed the front of Keyes's shirt and pointed the gun in her face.  He pulled Keyes to the cash register and demanded that she open it.  The assailant instructed Keyes to not press the store's silent alarm. The assailant emptied the register and asked Keyes about the store's safe.  Keyes saw flashing lights as she was emptying the register.  Keyes told the assailant that she could not open the safe. The assailant fled the scene.  A police officer came inside the store and she told him what had transpired.

That morning, while on routine patrol, Lieutenant Tyrone Lafargue with the St. James Parish Sheriff's Office ("SJPSO") drove by the store.  Upon entering the parking lot, Lieutenant

---

[5] *Id.* at 28, Amended Bill of Information, 10/11/17; *id.* at 16, Minute Entry, 10/10/17.

[6] ECF No. 12-1 at 17, Minute Entry, 10/10/17; ECF No. 12-7 at 90-91, Hearing Transcript, 10/10/17.

[7] The facts were taken from the opinion of the Court of Appeal of Louisiana, Fifth Circuit.  *See State v. Honor*, No. 19-379 (La. App. 5 Cir. 1/29/2020), 289 So. 3d 249, 253-55 (La. Ct. App. 2020), *writ denied*, 2020-00370 (La. 7/24/20), 299 So. 3d 72; ECF No. 12-8 at 8-13.

Lafargue observed the assailant, who wore a hoodie and kept his hands near his waist as if trying to conceal something, run out of the store in a crouched position. Lieutenant Lafargue suspected that the man had either stolen something or had committed a robbery. He drove after the suspect, who ran towards the carwash. After he lost sight of the assailant, Lafargue returned to the Big River store and spoke with Keyes who was "crying" and "traumatized."[8] Keyes told him that she had been robbed at gunpoint by a person wearing a black ski mask and a hoodie. Lieutenant Lafargue left the store to do a perimeter check. He observed a white female driving an older-model, white Crown Victoria. Lieutenant Lafargue became suspicious when the white female refused to make eye contact with him and drove at a suspiciously slow speed. Lieutenant Lafargue returned to the store again. Keyes advised that a female who exited a white Crown Victoria had entered the store prior to the robbery. Lieutenant Lafargue watched the surveillance video. He recognized the woman and the white Crown Victoria, and reported the incident and a description of the vehicle to SJPSO officers.

Detective Juliette Scioneaux and Detective Monica Credidio met with Keyes, who was still visibly shaken, at Big River gas station and took her statement. Keyes described the assailant, who was holding a gun, as wearing a black mask, green pants, a black hoodie, and blue or black shoes. Detective Scioneaux watched the surveillance video and was able to observe the gun, which appeared to her to be a semiautomatic weapon. Scioneaux noticed that there was something around the mouth area of the assailant's mask.

---

[8] *Honor*, 289 So. 3d at 254; ECF No. 12-8 at 8-13.

Meanwhile, SJPSO officers continued patrolling the area looking for Honor. Detective Derick Washington saw a white Crown Victoria and followed it. He and another officer performed a felony traffic stop. They questioned the driver, Renee Shrake, who told them she was going to her boyfriend's house. After the other officer read Shrake her *Miranda* rights, Shrake told Washington that her boyfriend's name was Maurice Jones and that he lived on Kilmer Street. Washington informed Shrake that no such person lived on Kilmer Street. Upon further questioning, Shrake advised that her boyfriend's name was Maurice Honor. Shrake was detained as the investigation was still ongoing.

Washington left the scene and stopped at another convenience store located approximately half a mile from the Big River store. While there, he received two separate reports that a black male wearing only a white undershirt and jogging pants had been roaming around in the parking lot that morning. Additionally, the store's cashier asked Washington to conduct a welfare check on the elderly man living in the house adjacent to the convenience store because the cashier could not reach him by telephone after repeated tries. During the welfare check, Detective Washington performed a perimeter search of the residence and discovered a dark hoodie, a black, gray, and green knitted ski hat with a ball on top, and a black pistol, which he believed to be a firearm, underneath the edge of the elevated house. Detective Washington moved the objects for officer safety. The homeowner, who was located at his residence, denied ownership of the items.

After Detective Washington advised Detectives Scioneaux and Credidio about the items he discovered under the house, they went to the house to recover the evidence. Upon viewing the mask and gun, Detective Scioneaux believed they were likely the same mask and gun portrayed in

the surveillance video from the Big River store.  Detective Credidio recovered the hoodie, the ski mask, and the gun, which she determined to be a BB gun, as evidence.

Detectives Credidio and Scioneaux interviewed Shrake at the Sheriff's Office.  Shrake initially was not truthful and advised that she had gone to Honor's mother's house, had sex with Honor, went to Boomtown Casino and left to go stay at a hotel in Vacherie.  Shrake initially claimed that they went to a carwash and that Honor told her to vacuum the vehicle.  While she was vacuuming, he put on the hoodie and left the vehicle.  Shrake later advised that they first went to a different store, but that it was too busy.  She told them that they went to the Big River store, and that she went inside to see how many people were in it.  Shrake advised that after she exited the store, Honor entered it.

SJPSO officers arrested Honor and Shrake pursuant to arrest warrants and obtained their DNA.  At that time, Shrake claimed that Honor had threatened her.  Detective Credidio swabbed the ski mask, and the trigger and handle of the gun, and sent the swabs for processing by the Louisiana State Police Crime Laboratory.  SJPSO officers searched Shrake's Crown Victoria pursuant to a warrant and recovered a black TracFone.

Tammy Rash, a forensic analyst with the Louisiana State Police Crime Lab, and an expert in the field of forensic DNA analysis, analyzed the DNA of Honor and Shrake and compared their profiles to the DNA found on the trigger and handle of the gun and on the mask.  Honor's DNA could not be excluded as being present on the mask, and a mixture containing Honor's and Shrake's DNA was found on the trigger of the BB gun.  Honor's DNA could not be excluded as being present on the handle of the BB gun.  Other DNA was present on the BB gun handle at such a low concentration that a valid DNA profile could not be obtained.

Shrake testified that she pled guilty pursuant to a plea agreement to conspiracy to commit first degree robbery. Shrake testified that Honor called her at approximately 6:00 p.m. the day before the robbery. She drove her white Crown Victoria to his house in Boutte. She and Honor then drove to the Treasure Chest casino. After they left the casino, Honor drove her car and Shrake fell asleep.

Shrake awoke in Thibodeaux. The car was parked across from a gas station. According to Shrake, Honor told her that he intended to commit a robbery. When Shrake advised Honor not to commit a robbery, Honor pulled her hair, put a gun in her face, and threatened to kill her parents and daughter. Because that particular gas station was busy, Honor drove them to the Big River gas station in Gramercy. Honor parked and exited the vehicle and told Shrake to go inside and look around. Shrake complied. When she returned to the vehicle, Honor told her to drive around to the car wash behind the gas station. Honor donned a black hoodie and a black, white, and green mask with a ball on top, and went inside the gas station. Shrake witnessed Honor run out of the gas station and into a residential area. Thereafter, she drove away in her vehicle and was eventually pulled over by the police.

Shrake testified that she initially lied to the officers because she was afraid and was protecting Honor. She admitted that, during her interview, she provided detectives with some untruthful information because she was scared, traumatized, and was trying to "cover for" Honor.[9] Shrake claimed her trial testimony was truthful to the best of her recollection and that she pled guilty to conspiracy to commit first degree robbery because she was in fact guilty.

---

[9] *Honor*, 289 So. 3d at 255; ECF No. 12-8 at 8-13.

Honor was tried from May 15 to May 17, 2018 and was found guilty as charged by a unanimous jury verdict.[10]  On October 9, 2018, the Trial Court sentenced Honor to forty years imprisonment at hard labor without the benefits of probation, parole, or suspension of sentence.[11]

On October 15, 2018, the State filed a bill of information charging Honor as a multiple offender.[12]  On November 12, 2019, the Trial Court found Honor to be a fourth habitual offender.[13]  On January 13, 2020, the Trial Court vacated Honor's sentence and sentenced him to forty-five years imprisonment at hard labor without the benefits of probation, parole, or suspension of sentence.[14]

On direct appeal, Honor's appointed counsel asserted that: (1) insufficient evidence supported the conviction; (2) the State's closing argument was improper, and the Trial Court erred in failing to grant his motion for mistrial; and (3) excessive sentence.[15]  On January 29, 2020, the Louisiana Fifth Circuit affirmed Honor's conviction, but remanded the case for correction of the commitment to delete the good behavior restriction placed on Honor's sentence.[16]  The Court found the evidence presented sufficiently supported Honor's conviction.[17]  The Court further found

---

[10] ECF No. 12-1 at 20-21, Trial Minutes, 5/15/18; *id.* at 23, Trial Minutes, 5/16/18; *id.* at 24, Trial Minutes, 5/17/18; ECF No. 12-2 at 20-125, Trial Transcript, 5/15/18; ECF No. 12-3 at 1-125, Trial Transcript (con't), 5/15/18; ECF No. 12-4 at 1-48, Trial Transcript (con't), 5/15/18; ECF No. 12-4 at 49-125, Trial Transcript, 5/16/18; ECF No. 12-5 at 1-125, Trial Transcript (con't), 5/16/18; ECF No. 12-6 at 1-17, Trial Transcript (con't), 5/16/18; ECF No. 12-6 at 18-125, Trial Transcript, 5/17/18; ECF No. 12-7, 1-44, Trial Transcript (con't), 5/17/18; ECF No. 12-1 at 96, Verdict, 5/17/18.

[11] ECF No. 12-1 at 26, Sentencing Minutes, 10/9/18; *id.* at 101-02, Reasons for Sentence, 10/9/18; ECF No. 12-7 at 45-51, Sentencing Transcript, 10/9/18.

[12] ECF No. 12-1 at 106, Multiple Bill of Information, 10/15/18.

[13] ECF No. 12-8 at 28-32, Hearing Transcript, 11/12/19.

[14] ECF No. 12-8 at 3-4, Multiple Offender Written Reasons for Judgment, 1/13/20; *id.* at 5, Uniform Sentencing Commitment Order, 1/13/20.

[15] ECF No. 12-8 at 46-64, Appellate Brief, 2019-KA-379, 10/22/19.

[16] *State v. Honor*, 289 So. 3d 249 (La. App. 5th Cir. 2020); ECF No.12-8 at 6-26, La. App. 5th Cir. Opinion, 19-KA-379, 1/29/20.

[17] *Id.* at 256-28; ECF No.12-8 at 13-17, La. App. 5th Cir. Opinion, 19-KA-379, 1/29/20.

that the Trial Court did not abuse its discretion in denying a mistrial.[18]  Finally, the court found

that the Trial Court did not err in abuse its discretion in imposing the maximum sentence.[19]

On July 24, 2020, the Louisiana Supreme Court denied Honor's related writ application

without assigning reasons.[20]

On October 13, 2020, Honor filed an application for post-conviction relief asserting the

following claims for relief: (1) the limitation on the institution of prosecution had expired prior to

his trial; (2) the arrest warrant was not supported by probable cause; (3) the admission of hearsay

and "other crimes" evidence through the testimony of Shrake violated his right to a fair trial; (4)

he was denied the right to a fair trial, and his sentence amounted to cruel and unusual punishment;

and (5) ineffective assistance of counsel.[21]  On December 28, 2020, the Trial Court denied the

application.[22]  The Trial Court explained that the first claim lacked merit as the trial was continued

multiple times at the request of the defense.[23]  The Trial Court found that Honor's second, third

and fourth claims were fully litigated on direct appeal.[24]  As to the fifth claim, the Trial Court

found Honor failed to show any deficient performance or prejudice.[25]

On February 8, 2021, Honor filed a motion for leave to supplement his application for post-

conviction relief to include an additional claim of ineffective assistance of counsel was ineffective

---

[18] *Id.* at 258-60; ECF No.12-8 at 17-21, La. App. 5th Cir. Opinion, 19-KA-379, 1/29/20.

[19] *Id.* at 260-264; ECF No.12-8 at 21-25, La. App. 5th Cir. Opinion, 19-KA-379, 1/29/20.

[20] *State v. Honor*, 299 So. 3d 72 (La. 20205); ECF No. 12-9 at 67, La. S. Ct. Order, 2020-KO-00370 (La. 7/24/20).

[21] ECF No. 12-8 at 113-15, Uniform Application for Postconviction Relief, 10/19/20 (signed 10/13/20); *id.* at 116-25, Memorandum of Law in Support of Application for Post-Conviction Relief, 10/13/20; ECF 12-9 at 1-67, Memorandum of Law in Support of Application for Post-Conviction Relief (con't), 10/13/20.

[22] ECF No. 12-9 at 71, Order, 12/28/20.

[23] ECF No. 12-9 at 68, 70, Reasons for Judgment, 12/29/20.

[24] *Id.* at 68-70.

[25] *Id.*

in his cross-examination of Shrake.[26]  On February 17, 2021, the Trial Court granted the motion to supplement.[27]

On October 8, 2021, Honor filed a petition for writ of mandamus with the Louisiana Fifth Circuit Court of Appeals.[28]  On October 25, 2021, the Louisiana Fifth Circuit granted the writ application for the limited purpose of directing the state district court to rule on Honor's supplemental application for post-conviction relief.[29]  On January 9, 2022, the Trial Court found that Honor had not shown prejudice and denied his supplemental application.[30]  On March 8, 2022, the Louisiana Fifth Circuit denied as moot Honor's writ application seeking mandamus relief.[31]

On March 3, 2022, Honor filed a writ application relating to the denial of his application for post-conviction relief, as supplemented.[32]  On April 27, 2022, the Louisiana Fifth Circuit denied the writ application.[33]

On September 20, 2022, the Louisiana Supreme Court denied Honor's related writ application finding that he failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).[34]

---

[26] ECF No. 12-9 at 76-77, Motion for Leave to Supplement Petitioner's Application for Post-Conviction Relief, 2/11/21 (signed 2/8/21); *id.* at 72-75, Memorandum in Support of Supplement to Petitioner's Application for Post-Conviction Relief, 2/11/21 (signed 2/8/21).

[27] ECF No. 12-9 at 78, Order, 2/17/21.

[28] ECF No. 12-10 at 54-65, Petition for Writ of Mandamus, 21-KH-649, 10/8/21.

[29] *State v. Honor*, No. 21-KH-649, 2021 WL 4952538 (La. App. 5th Cir. Oct. 25, 2021); ECF No. 12-10 at 81-82, La. 5th Cir. Order, 21-KH-649, 10/25/21.

[30] ECF No. 12-9 at 82, Judgment, 1/9/22.

[31] ECF No. 12-9 at 83, La. 5th Cir. Order, 22-KH-35, 3/8/22.

[32] ECF No. 12-11 at 92-124, La. 5th Writ Application, 22-KH-96, 3/3/22; ECF No. 12-12 at 1-29, La. 5th Writ Application (con't), 22-KH-96, 3/3/22.

[33] ECF No. 12-11 at 85-90, La. 5th Cir Order, 22-KH-96, 4/27/22.

[34] *State v. Honor*, 346 So. 3d 276 (La. 2022); ECF No. 12-11 at 83, La. S. Ct. Order, 22-KH-0823, 9/20/22; ECF 12-10 at 85-125, La. S. Ct. Writ Application, 22KH 823, 5/25/22 (signed 5/18/22); ECF No. 12-11 at 1-81, La. S. Ct. Writ Application (con't), 22KH 823, 5/25/22 (signed 5/18/22).

## II.    <u>Federal Habeas Petition</u>

On April 20, 2023, Honor filed his original petition for federal habeas corpus.[35]   Honor raises the following claims for relief: (1) ineffective assistance of counsel for failing to properly examine Shrake concerning the impossibility of her eyewitness testimony; (2) ineffective assistance of counsel for failing present an expert witness to testify regarding the obfuscating effects of heroin use on a witness's testimony; (3) ineffective assistance of counsel for failing object to highly prejudicial "other crimes" and hearsay evidence; and (4) ineffective assistance of counsel for advising him not to testify on his own behalf.[36]

The State filed a response claiming that Honor failed to exhaust his third claim.[37]   The State asserts that all of Honor's claims are meritless.[38]

## III.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[39] applies to this petition, which was filed in this Court under the mailbox rule on April 20, 2023.[40]   The threshold questions on habeas review under the amended statute are

---

[35] Rec. Doc. No. 1.

[36] *Id.* at 6; Rec. Doc. No. 1-1 at 9-22.

[37] Rec. Doc. No. 10 at 1; ECF No. 10-1 at 7-9.

[38] ECF 10-1 at 9-23.

[39] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[40] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Ross certified that he placed his petition in the prison mailing system on April 20, 2023.  Rec. Doc. No. 1-1 at 24.

whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c)).

The State argues that Honor's third claim is unexhausted.[41]  It argues that all of Honor's claims are meritless.[42]

## IV.    <u>Preliminary Review - Exhaustion</u>

The State contends that Honor failed to exhaust his state court remedies as to his third ineffective assistance of counsel claim for failure to object to other crimes and hearsay evidence. A petitioner normally must first exhaust his remedies in the state courts before seeking habeas corpus relief from the federal courts.  28 U.S.C. § 2254(b)(1)(A); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims.") (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982))).

A petitioner properly exhausts state remedies only by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (requiring state prisoners, in order to fully exhaust their claims, "to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State").  "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state

---

[41] ECF No. 10 at 1; ECF No. 10-1 at 7-9.
[42] ECF No. 10-1 at 12-23.

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

Furthermore, a petitioner's federal claim must have been "fairly presented" at each level of the state-court system. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* (citing *Nobles*, 127 F.3d at 420). Nor is the fair-presentation standard satisfied if the state court must read beyond the petition or brief, for instance to a lower-court opinion, to identify the claim. *Baldwin*, 541 U.S. at 32.

The State argues that the third claim is not exhausted because Honor's counsel failed to object to the evidence and because Honor failed to argue on direct appeal that the evidence was erroneously admitted.[43]  However, Honor does not raise a substantive claim relating to the admission of erroneous evidence. Rather, the fact that Honor's trial counsel failed to object to the evidence is the basis for Honor's third ineffective assistance of counsel claim. Trial counsel's failure to contemporaneously object prevented the substantive issue relating to the admission of the evidence from being preserved for appeal. *See* La. Code Crim. P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.").

---

[43] ECF No. 10-1 at 9.

It is clear from a review of the record that Honor raised his claim of ineffective assistance of counsel for failure to object to other crimes and hearsay evidence before each level of the state courts.[44]  This Court therefore rejects the State's argument that the third claim was not exhausted.[45]

## V.    **Standards of a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

Under § 2254(d)(2), a state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.

---

[44] ECF No. 12-9 at 1-2, Memorandum of Law in Support of Application for Post-Conviction Relief (con't), 10/13/20; ECF No. 12-11 at 97, 104-08, La. 5th Writ Application, 22-KH-96, 3/3/22; ECF No. 12-10 at 87, 91, 97-100, La. S. Ct. Writ Application, 22KH 823, 5/25/22 (signed 5/18/22).

[45] The State does not argue that the state courts imposed a procedural bar to claim three.  In any event, the Louisiana Supreme Court did *not* impose a procedural bar as to any claim.  Rather, the Louisiana Supreme Court found that Honor failed to show that he received ineffective assistance of counsel under *Strickland*.  *Honor*, 346 So. 3d at 276; ECF No. 12-11 at 83, La. S. Ct. Order, 22-KH-0823, 9/20/22.

*Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 527; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 699 (2002); quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.     Ineffective Assistance of Counsel (Claims One Through Four)

In claim one, Honor asserts that his counsel was ineffective in properly cross-examining Shrake about the impossibility of her eyewitness testimony. In claim two, he argues that his counsel was ineffective in failing to present the testimony of an expert witness. In claim three, Honor contends that his counsel was ineffective in failing to object to "other crimes" evidence and hearsay testimony. In claim four, he faults his counsel for advising him not to testify in his own defense.

The State responds that the state courts did not unreasonably apply *Strickland* in determining that Honor failed to meet his burden to establish ineffective assistance of counsel.

Honor raised these claims on state post-conviction review. The Trial Court denied relief, finding that "no showing of actual prejudice has been made by defendant to show that counsel's

representation of him at trial was deficient under the *Strickland v. Washington* standard.[46]    The

Louisiana Fifth Circuit found as follows:

> In his writ application to this Court, relator complains only that the trial court erred in denying his ineffective assistance of counsel claims.  Relator contends that his trial counsel was constitutionally ineffective for (1) failure to properly cross-examine a codefendant/witness, Renee Shrake, at trial; (2) failure to secure an expert to testify as to the effects of heroin use; (3) failure to object to other crimes evidence and hearsay statements presented at trial; and (4) advising realtor not to testify on his own behalf at trial.  For the following reasons, we find the trial court was correct in its judgment and we deny the writ.
>
> A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitutional and Article 1 § 13 of the Louisiana Constitution.  *State v. Johnson*, 08-1156 (La. App. 5 Cir. 4/28/09), 9 So. 3d 1084, 1092, *writ denied*, 09-1394 (La. 2/26/10), 28 So. 3d 268.  To prove ineffective assistance of counsel, a defendant must prove both that his attorney's performance was deficient and that he was prejudiced by the deficiency.  *Id.* at 1092-93 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  In order to show prejudice, a defendant must demonstrate that but for counsel's deficient performance, he outcome of the proceedings would have been different.  *Id.*
>
> The Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective by hindsight.  *State v. Cambre*, 05-888 (La. App. 5 Cir. 7/25/06), 939 So. 2d 446, 460, *writ denied*, 06-2121 (La. 4/20/17), 954 So. 2d 158 (citing *State v. LaCase*, 99-584 (La. 1/25/02), 824 So. 2d 1063, 1078, *cert. denied*, 537 U.S. 865 (2002).  There is a strong presumption that counsel's conduct will fall within the wide range of reasonable professional assistance.  *State v. Gorman*, 11-491 (La. App. 5 Cir. 2/14/12), 88 So. 3d 590, 600.
>
> First, relator contends that his trial counsel failed to properly cross-examine the co-defendant and witness Renee Shrake at trial.  As an initial matter, decisions on the amount of cross-examination by counsel typically fall within the ambit of trial strategy.  *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 13333, 1337; *State v. Mitchell*, 44,008 (La. App. 2 Cir. 2/25/09), 4 So. 3d 320, 326, writ denied, 09-0718 (La. 2.12.10), 27 So. 3d 841, and writ denied sub. nom. State ex rel. Mitchell v. State, 09-1570 (La. 4/30/10), 34 So. 3d 285; State v. Thomas, 99-1658 (La. App. 4 Cir. 12/22/99), 750 So. 2d 114, 1124, writ denied, 00-2503 (La. 8/31/01), 795 So. 2d 1203.  Upon our review, given the evidence presented against the defendant at trial, we find relator has failed to show that the extent of cross-examination of the co-defendant in this case would have affected the verdict.  This argument is without merit.
>
> Second, concerning relator's claim that his counsel was ineffective for failure to present an expert witness concerning the effect of heroin use to attack Shrake's credibility due to her drug-induced state at the time of the crime, we find this claim lacks merit.  Generally, the decision to call or not call any particular witness is a matter of trial strategy and is not per se evidence of ineffective assistance of counsel.  *State v. Allen*, 06-778 (La. App. 5 Cir. 4/24/07), 955 So. 2d 742.  Moreover, given the evidence presented against defendant at trial, including the presence of his DNA on items linked to the crime as further

---

[46] ECF No. 12-9 at 70, Reasons for Judgment, 12/28/20; ECF 12-12 at 28, Judgment, 1/9/22.

discussed in this Court's opinion on relator's direct appeal, we find relator has failed to show that any evidence concerning heroin use to attack Shrake's credibility would have resulted in a different verdict. This argument lacks merit.

Third, concerning relator's argument that his counsel failed to object to hearsay and other crimes evidence presented at trial, we find that the trial court correctly found this claim to be procedurally barred under La. C.Cr.P. art. 930.4 as a claim of which relator had knowledge but failed to raise at the trial court level or on appeal. Nevertheless, given the amount of evidence presented against defendant at trial, we find that relator has failed to prove that, even without the other crimes or hearsay evidence presented at trial, the outcome of the verdict would have been different. Thus, relator has failed to meet his burden to prove ineffective assistance of counsel on this ground.

Finally, considering relator's argument that his counsel was ineffective for advising him not to testify on his own behalf at trial, we find counsel's recommendation to relator against testifying at trial to be reasonable trial strategy that falls within the wide range of reasonable professional assistance and thus does not constitute ineffective assistance of counsel. *State v. Gorman*, 11-491 (La. App. 5 Cir. 2/14/12), 88 So. 3d 590, 600; *State v. Mitchell*, 4 So. 3d at 326-327. This argument lacks merit.[47]

The Louisiana Supreme Court found that Honor failed to meet his burden that trial counsel was ineffective under *Strickland*.[48]

### A. Ineffective Assistance of Counsel Generally

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296

---

[47] ECF No. 12-10 at 107-09, La. 5th Cir. Order, 22-KH-96, 4/27/22 (footnote omitted).
[48] *Honor*, 346 So. 3d at 276; ECF No. 12-11 at 82-83, La. Sup. Ct. Order, 2022-KH-00823, 9/20/22.

(1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See id.* at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997), and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court

recognized the high level of deference owed to a state court's findings under *Strickland* in light of

AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general
> one, so the range of reasonable applications is substantial.  Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with unreasonableness
> under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable.  The question is whether there is any reasonable argument that counsel
> satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal

courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard

through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and then quoting

*Knowles*, 556 U.S. at 121 n.2).

### B.  Properly Cross-Examine Shrake (Claim One)

Honor faults his trial counsel for failing to properly cross-examine Shrake concerning the

impossibility of her eyewitness testimony.  He claims that had counsel properly cross-examined

her, it would have been established that she could not have witnessed the alleged crime from where

she was located.  He further contends that defense counsel failed to point out that Shrake's

testimony "constantly evolved to match the version suggested by the police," and that her trial

testimony diverged significantly from her initial statement.

The State responds that Honor fails to substantiate his claim that Shrake could not observe

the crime from her position.  It further argues that defense counsel vigorously questioned Shrake

regarding the events prior to during and after the crime as well as her drug use.  The State also

claims that the accumulation of evidence presented supported Shrake's trial testimony. It concludes that Honor fails to show that his trial counsel performed deficiently.

Initially, the method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude. *See United States v. Octave*, No. 12-205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291) (5th Cir. 2011). The federal courts have made clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, Nos. 06-02224, 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

Any such second-guessing is especially inappropriate here. The record reflects defense counsel extensively cross-examined Shrake in an attempt to undermine her credibility and pointed out many inconsistencies between her statement to police and her trial testimony. During cross-

21

examination, Shrake admitted that she originally identified Honor under a false name.[49]  She claimed that she lied when she told the detectives that she and Honor had sex, and that she provided law enforcement with the wrong name of the casino.[50]  Shrake further admitted that she could not identify what Honor was wearing other than a black hoodie.[51]  While Shrake initially testified that she had never seen the gun before, she admitted on cross-examination that she may have told detectives that she had previously seen Honor with a BB gun.[52]  She then claimed that she knew that Honor had a gun on the night of the robbery because he showed it to her.[53]  Shrake testified on cross-examination that she did not go into Honor's house when she picked him up, and that she lied when she told detectives that she went into the house.[54]  She claimed that, because she was scared, she lied to detectives when she told them that she hung out at Honor's house and then they got something to eat before going to the casino.[55]  Shrake claimed that she did not go into the casino and did not speak with Honor's mother.[56]  Shrake admitted that she told detectives that Honor was carrying a BB gun although she claimed that she did not know it was a BB gun.[57]  Shrake insisted that, prior to her videotaped statement, she told detectives that Honor threatened her and put a gun in her face.[58]  She admitted that she was using drugs at the time of the crime

---

[49] ECF No. 12-5 at 79, Trial Transcript (con't), 5/16/18.
[50] *Id.* at 82, 87, 90-91, 95, 97-98.
[51] *Id.* at 82.
[52] *Id.* at 84.
[53] *Id.* at 84-85.
[54] *Id.* at 87-88, 97.
[55] *Id.* at 92-94.
[56] *Id.* at 88.
[57] *Id.* at 94, 111.
[58] *Id.* at 98, 111.

including Suboxone and heroin.[59]   Defense counsel also elicited testimony that Shrake was

testifying pursuant to a plea agreement and was sentenced to four years' probation.[60]

During closing argument, defense counsel argued that Shrake's testimony was "a story

totally different than anything she told the police before.[61]   He pointed out all the inconsistencies

between her statement to law enforcement and her trial testimony.[62]   He argued that Shrake had an

addiction to heroin and that she did not even remember the events of the evening.[63]   Defense

counsel argued that Shrake lied to protect someone other than Honor and, despite her plea

agreement, she repeatedly lied at trial.[64]

While defense counsel did not specifically question Shrake about her view from the

carwash parking lot, Honor has not shown that counsel was ineffective in cross-examining Shrake.

There is no evidence that Shrake was unable to see Honor flee the scene from her vantage point at

the carwash.   To the contrary, Lieutenant Lafarge testified regarding the location of the carwash

in relation to the store and testified that Honor ran towards the car wash when he fled from the

store.[65]

It is clear from the record that defense counsel attempted to discredit the State's case

through cross-examination in an effort to raise doubt about the reliability of the testimony and in

support of Honor's claim of actual innocence.   The testimony was presented to the jury, which as

the trier of fact, weighed and considered the testimony.   The fact that the jury did not believe the

---

[59] *Id.* at 98, 100.
[60] *Id.* at 105, 110.
[61] ECF No. 12-6 at 125, Trial Transcript, 5/17/18.
[62] *Id.* at 125; ECF No. 12-7 at 6-7, Trial Transcript (con't), 5/17/18.
[63] ECF No. 12-7 at 1-3, Trial Transcript (con't), 5/17/18.
[64] *Id.* at 15-17.
[65] ECF No. 12-4 at 111-12, Trial Transcript, 5/16/18.

defense does not render counsel's performance constitutionally deficient.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689 (citations omitted).

Honor has failed to establish that the denial of relief by the state courts on this ground was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this claim.

## C.  Call an Expert (Claim 2)

Honor claims that his trial counsel was ineffective for failing to call an expert witness to explain to the jury why Shrake's testimony was unworthy of belief.  He contends that an expert could have testified about the effects of heroin use on a person's memory, including its malleability.

The State responds that the decision not to hire an expert falls within the realm of trial strategy.  It points out that defense counsel actively cross-examined Shrake about her drug use and highlighted the inconsistencies in her testimony, thus allowing the jury to see the weaknesses in Shrake's testimony.  The State concludes that Honor fails to show deficient performance on the part of defense counsel.

To prevail on an ineffective assistance claim based upon uncalled witnesses, including an expert witness, a habeas petitioner must show that he was prejudiced by counsel's decision not to call an expert.  Thus, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  There are "countless ways to provide effective assistance in any given case.  Even the best criminal

defense attorneys would not defend a particular client in the same way." *Id.* at 689.  In some cases, counsel would be considered ineffective for failing to consult with or call an expert, but state courts would have a wide latitude in making such a determination.  *Harrington*, 562 U.S. at 106.

The law is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.  *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." *Id.*; *Griffith v. Quarterman*, 196 F. App'x 237, 243 (5th Cir. 2006); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).  The requirement that the petitioner establish prejudice based on his counsel's failure to call a witness by naming the witness, setting forth the proposed testimony, demonstrating that the witness was available and would have testified, and showing the testimony would have been favorable to his defense applies to both lay and expert witnesses.  *Woodfox v. Cain*, 609 F.2d 774, 808 (5th Cir. 2010) (citing *Day v. Quarterman*, F.2d 527, 538 (5th Cir. 2009)).

Honor merely speculates that an expert could have testified about the effects heroin use has on a person's memory, including its "malleability," and could have helped the jury understand while Shrake's testimony was unworthy of belief.  Honor, however, has presented no actual evidence demonstrating that an expert was actually available and would have testified in a manner beneficial to the defense.  Indeed, Honor has not even identified an expert witness who was available and willing to testify.  Nor has he set forth the content or substance of the unidentified expert witness' proposed testimony.  As a result, this Court cannot find counsel ineffective for failing to present the testimony of a purely theoretical expert.  *Anthony v. Cain*, No. 07-3223, 2009

WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.").

Nor has Honor demonstrated a reasonable probability that he would not have been convicted but for his counsel's failure to call an expert. As previously explained, defense counsel extensively cross-examined Shrake regarding the inconsistencies in her statement to detectives and her trial testimony. Shrake admitted on cross-examination that she had lied to detectives about some of the details she provided.[66] Shrake further admitted that she was using Suboxone and had previously been doing heroin.[67] Defense counsel argued that Shrake had an addiction to heroin and that she did not even remember the events of the evening.[68] Further, Honor's DNA was found on clothing and the BB gun linked to the crime.[69]

For all these reasons, Honor has failed to demonstrate that the state courts' decision denying his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject the claim.

### D.    Object to Hearsay & Other Crimes Evidence (Claim Three)

Honor next contends that his counsel failed to object to the introduction of "bad character" evidence. He also argues that his counsel was ineffective in failing to object to hearsay testimony from Detective Washington, Detective Credido and Shrake.

---

[66] ECF No. 12-5 at 79, 94, 97-98, Trial Transcript (con't), 5/16/18.

[67] *Id.* at 98-100.

[68] ECF No. 12-7 at 1-3, Trial Transcript (con't), 5/17/18.

[69] ECF No. 12-5 at 122-25, Trial Transcript (con't), 5/16/18; ECF No. 12-6 at 1-3, 8, Trial Transcript (con't), 5/16/18.

The State responds that Honor fails to show that his counsel acted deficiently in failing to object. It further argues that Honor fails to show that but for counsel's failure to object to the evidence, he would not have unanimously found guilty.

Louisiana law generally prohibits the admission of "other crimes evidence," or evidence of criminal conduct uncharged in the indictment, with exceptions for proving identity, system, or *res gestae*. *Robinson v. Whitley*, 2 F.3d 562, 566 (5th Cir.1993) (citing *State v. Prieur*, 277 So. 2d 126, 128 (La. 1973)). Honor specifically faults his counsel for failing to object to the following "bad character" evidence: (1) Shrake's testimony that Honor initially planned to rob a Circle K; (2) Shrake's testimony that he pulled her hair and put a gun in her face; and (3) Detective Credido's testimony relating to the clothes and gun used in the robbery.

The trial transcript reflects that Shrake testified that Honor originally told her he wanted to rob a Circle K in Thibodaux, and that when she tried to get out of the car, he pulled her hair and put a gun in her face.[70] Contrary to Honor's contention that counsel should have objected to the testimony as inadmissible character evidence, the testimony was properly admissible pursuant to the *res gestae* doctrine. The Louisiana Supreme Court has explained the admissibility of such evidence in the state courts, noting:

> This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." *State v. Brewington*, 601 So. 2d 656, 657 (La. 1992). This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." *State v. Molinario*, 383 So. 2d 345, 350 (La. 1980). We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v.*

---

[70] ECF No. 12-5 at 70-71, Trial Transcript (con't), 5/16/18.

> *Haarala*, 398 So. 2d 1093, 1098 (La. 1981) (emphasis added); *see also* 1 McCORMICK ON
> EVIDENCE, § 190, 799 (4th ed., John William Strong ed., 1992) (other crimes evidence may
> be admissible "[t]o complete the story of the crime on trial by placing it in the context of
> nearby and nearly contemporaneous happenings.") (footnote omitted).  The *res geaste* [sic]
> or integral act doctrine thus "reflects the fact that making a case with testimony and tangible
> things not only satisfies the formal definition of an offense, but tells a colorful story with
> descriptive richness.  *Old Chief v. United States*, 519 U.S. 172, 186 (1997).  The test of
> integral act evidence is therefore not simply whether the state might somehow structure its
> case to avoid any mention of the uncharged act or conduct but whether doing so would
> deprive its case of narrative momentum and cohesiveness, "with power not only to support
> conclusions but to sustain the willingness of jurors to draw the inferences, whatever they
> may be, necessary to reach an honest verdict."  *Id.*

*State v. Colomb*, 747 So. 2d 1074, 1075-76 (La. 1999).  Evidence necessary to explain the sequence

of events to the jury, like the evidence at issue here, is relevant and admissible under the *res gestae*

doctrine.  *See, e.g.*, *State v. Senegal*, 19 So. 3d 623, 627 (La. App. 3rd Cir. 2009); *State v. Clements*,

519 So. 2d 236, 238 (La. App. 5th Cir. 1988); *State v. Johnson*, 440 So. 2d 838, 842 (La. App. 2d

Cir. 1983).  Because Honor has not established that Shrake's testimony was improper, he cannot

show that counsel was ineffective for failing to object to its admission.   Trial counsel's

performance can never be deficient for failing to make a specious objection.  *Clark v. Collins*, 19

F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering;

it is the very opposite."); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An

attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective

assistance of counsel claim because the result of the proceeding would not have been different had

the attorney raised the issue.").

     Honor also argues that Detective Credidio's testimony that the clothes and gun found under

the house were used in the robbery was inadmissible other crimes evidence because "the items

found under the residence were not proven to be evidence in the robbery and were not relevant to

the robbery of the Big River gas station."[71]

---

[71] ECF No. 1-1 at 18.

Detective Credidio identified the items found under the house on North Airline Avenue in Gramercy, including a black hoodie; a black, green and grey hat with holes cut in it; and a black BB gun.[72]  Certainly this testimony does not constitute inadmissible evidence of "other crimes." Defense counsel is not ineffective for failing to urge a baseless objection. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (not requiring counsel to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

Further, Honor fails to show any prejudice as a result of his counsel's failure to object to the testimony.  Contrary to Honor's contention, the State presented evidence that the items found under the house were worn by the perpetrator who carried also carried the gun.[73]  That evidence included DNA evidence on the hat that could not exclude Honor as the donor.[74]  Additionally, the hat matches the one worn by the perpetrator as depicted in the surveillance video of the robbery.[75] Moreover, Shrake identified Honor as the perpetrator and linked him to the clothing and the BB gun.[76]  Honor is not entitled to relief as to this claim.

As noted, Honor also faults his counsel for failing to object to alleged hearsay testimony including: (1) Detective Washington's testimony that a clerk at the Tobacco Express indicated that a black male was walking in the parking lot; (2) Detective Credidio's testimony that Shrake told her they intended on robbing a Circle K; (3) Shrake's testimony that Honor initially planned to rob

---

[72] ECF No. 12-6 at 27-31, 39, Trial Transcript, 5/17/18.
[73] ECF No. 12-5 at 72-75, Trial Transcript (con't), 5/16/18; ECF No. 12-6 at 65, Trial Transcript, 5/17/18.
[74] *Id.* at 122-23.
[75] ECF No. 12-6 at 59-62, 65, Trial Transcript, 5/17/18.
[76] ECF No. 12-5 at 69-76, Trial Transcript (con't), 5/16/18.

a Circle K; (4) Shrake's testimony that that Honor robbed the Big River gas station when she did not witness the robbery.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. Code Evid. art. 801(C).

Initially, Detective Washington testified that when he walked into the Tobacco Express, a customer informed him that he had seen a black male subject walking in the parking lot, and, because he did not know the person was the subject he was looking for, he called for other units.[77] Defense counsel had no basis to object to this testimony. "Under the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest." *Woodfox*, 609 F.3d at 814. In this case, the statement was not offered for the truth of the matter asserted, but to explain why certain steps were taken during the investigation. Defense counsel was not ineffective in failing to assert a meritless objection. *Clark*, 19 F.3d at 966; *accord Kimler*, 167 F.3d at 893; *Smith*, 907 F.2d at 585 n.6.

Honor next complains of Shrake's testimony that Honor initially wanted to rob a Circle K as well as Detective Credido's testimony that Shrake told her that Honor initially planned to rob a Circle K. The trial transcript reflects that Shrake testified that Honor told her that he wanted to rob a Circle K in Thibodaux, but that it ended up being too busy, so they drove to Big River.[78] Defense counsel's failure to object to this testimony on the basis of hearsay does not constitute deficient performance for the following reasons.

---

[77] ECF No. 12-5 at 7, Trial Transcript (con't), 5/16/18.
[78] *Id.* at 71.

An out-of-court statement of the accused is admissible as an exception to the hearsay rule when it is an admission against interest under La. Code Evid. art. 804(B)(3). A statement against penal interest is one that, at the time of its making, was so far contrary to the declarant's pecuniary interest, or so far tended to subject him to criminal liability, that a reasonable man in his position would not have made the statement unless he believed it to be true. For such a statement to be admissible, there must be corroborating circumstances that clearly indicate the statement's trustworthiness. *Id.* "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Williamson v. United States*, 512 U.S. 594, 603-04 (1994) (quoting FED. R. EVID. 804(b)(3)).

Because article 804(B)(3) of Louisiana's Code of Evidence closely parallels Federal Rule of Evidence 804(b)(3), Louisiana courts have relied on federal jurisprudence in determining the admissibility of a statement against pecuniary interest. *State v. Kimble*, 688 So. 2d 552, 556 (La. 2d Cir. 1996) (citation omitted). "When made in a noninvestigatory context, where the setting indicates no motive to speak falsely, statements against penal interest and confessions to personal acquaintances or family members suggest reliability, even when adversely implicating others." *Id.* (citing *United States v. Flores*, 985 F.2d 770, 779-80 (5th Cir. 1993)).

A statement has the "particularized guarantees of trustworthiness" where: (1) the declarant implicates himself as much as his co-defendant in a crime; (2) the declarant had no self-interested motive to confess to the crime, "other than perhaps to brag about his criminal past to increase his clout in prison;" (3) the declarant was not coerced into confessing; and (4) the declarant was not attempting to curry favor with law enforcement. *United States v. Taylor*, 802 F. App'x 604, 608

(2d Cir. 2020) (co-defendant's statements to cellmate implicating himself and Taylor were admissible at joint trial pursuant to Rule 804(b)(3)); *United States v. Manfre*, 368 F.3d 832, 840-41 (8th Cir. 2004) (co-conspirator's fiancée's testimony that co-conspirator told her he planned to burn down the nightclub for defendant was admissible under Rule 804(b)(3)); *State v. Raine*, 238 So. 3d 1076, 1086 (La. App. 4th Cir. 2018) (declarant's statements to family members and cellmate that he had been paid by defendant to kill the victim were properly admitted as nontestimonial statements against interest pursuant to art. 804(B)(3)).

Here, Honor's nontestimonial statement to Shrake, his then-girlfriend, that he planned to rob the gas station was reliable. *Manfre*, 368 F.3d at 841(statement to fiancée that was not made under pending threat of prosecution was reliable where "it is not unreasonable to read credibility and honesty into such a relationship"). Thus, defense counsel was not ineffective in failing to object to the testimony.

After Shrake testified, Detective Credidio testified that Shrake told her during her interview that they went to a Circle K in either Thibodaux or Raceland to rob a Circle K, but the store was too busy, so they went to another store.[79] To the extent that Credidio testified regarding what Shrake told her during her interview, that testimony was admissible under La. Code Evid. art. 801(D)(1), and defense counsel was not ineffective in failing to object to the testimony.

Finally, to the extent that Honor claims that Shrake's testimony that Honor robbed the gas station constitutes hearsay because she did not actually witness the robbery is incorrect. Shrake's testimony was an in-court statement. Counsel was not ineffective in failing to object on that basis.

Even if the foregoing testimony constitutes hearsay and counsel's failure to object to the testimony constitutes ineffective assistance, Honor has failed to show prejudice resulting from

---

[79] ECF No. 12-6 at 32, Trial Transcript, 5/17/18.

counsel's failure to object.  The other evidence in the case was strong evidence of guilt.  Shrake testified that she was with Honor the morning of the robbery.[80]  She admitted they entered the gas station to determine if anyone was inside shortly before the robbery occurred.[81]  Shrake testified that Honor put on a black hoodie and a mask with a ball on top, and took a gun and went inside the gas station store.[82]  Shrake saw Honor run out of the store and into a residential area.[83]  Keyes described Shrake's white Crown Victoria which was parked near the gasoline pumps.[84]  The surveillance video depicted Shrake entering the store as well as Shrake's vehicle outside the store.[85]  The surveillance video also depicted the robbery by a man wearing a hoodie and a mask, and carrying a gun.[86]  A black hoodie, a ski hat, and a gun were located approximately one-half mile from the gas station.[87]  Honor's DNA could not be excluded as being present on the mask, and a mixture of Honor and Shrake's DNA was found on the trigger of the BB gun.[88]  Honor's DNA also could not be excluded from that found on the handle of the BB gun.[89]

Honor has failed to establish that the denial of relief by the state courts on this ground was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this claim.

### E.    Advise Him Not to Testify (Claim Five)

Honor's final claim is that his defense counsel was ineffective in advising him not to testify in his own defense due to his history of prior convictions and the possibility of self-incrimination.

---

[80] ECF No. 12-5 at 69-72, Trial Transcript (con't), 5/16/18.

[81] *Id.* at 72.

[82] *Id.* at 72-76.

[83] *Id.* at 76.

[84] ECF No. 12-4 at 69, Trial Transcript, 5/16/18.

[85] *Id.* at 88, 90-91.

[86] *Id.* at 92-95.

[87] ECF No. 12-5 at 7-20, Trial Transcript (con't), 5/16/18; ECF No. 12-6 at 27-31, 63, 65, Trial Transcript, 5/17/18.

[88] *Id.* at 122-24.

[89] *Id.* at 125.

The State responds that Honor does not argue that his counsel prohibited him from testifying, but that he merely acquiesced during trial to the recommendation of trial counsel. It continues that, given Honor's three prior felony convictions and incidents that occurred while he was serving those sentences, his defense counsel's advice not to testify was sound trial strategy.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth, and Fourteenth Amendments. *E.g.*, *Rock v. Arkansas*, 483 U.S. 44, 49 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994). When, as here, a habeas petitioner alleges that his counsel, not the court or the prosecution, prevented him from testifying, the Fifth Circuit has "held that the 'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" *Sayre*, 238 F.3d at 634 (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, No. 97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. 06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).

In *Underwood*, the United States Eleventh Circuit Court of Appeals identified numerous problems that would result if habeas petitioners were not required to satisfy the burden of proof. *Underwood*, 939 F.2d at 475-76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st

Cir. 1987), the *Underwood* Court recognized that an assertion that counsel forbade a defendant from testifying, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was [to] denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475-76; *accord Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.), *cert. denied*, 558 U.S. 950 (2009).

Addressing similar claims, the Fifth Circuit has also cited *Underwood* and "observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."  *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 476) (a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed").  The Fifth Circuit agreed that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."  *Id.* at 628 (citing *Underwood*, 939 F.2d at 475).

To the extent that Honor suggests that counsel made the decision for Honor not to testify at trial, he has presented no support for such a contention.  The transcript also reflects nothing to indicate that Honor was forced to remain silent at trial.  To the contrary, the record reflects that Honor's decision not to testify was made after discussions with his counsel and the Trial Court.

Before the defense rested, the Trial Court gave defense counsel time to discuss matter with Honor.[90]  After the break, defense counsel advised that he had discussed the matter of testifying with Honor and that Honor would not be testifying.[91]   The following colloquy then occured between the Trial Court and Honor:[92]

| | |
|---|---|
| THE COURT: | Okay.  Before I bring the jury in for you to rest in front of them, Mr. Honor do you understand?  You've discussed the strategy with your attorney; you understand that you do not have to testify; you're presumed innocent, but you can choose to testify, and have you discussed that with your attorney? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | And have you discussed all the implications of whether you testified or not? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Do you have any questions that your attorney left unanswered about that? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | And it is your decision not to testify? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Okay.  Did Mr. Alessi threaten or force you and tell you – |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | -- "Don't get up there and do this"? |
| THE DEFENDANT: | No. |
| THE COURT: | He actually discussed it with you, what your choice was and what could happen if you did or if you didn't? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Okay. |

As discussed in *Underwood* and its progeny, the record contains nothing to give credence to any claim by Honor that his counsel prevented him from testifying.  Honor has provided no substantiation for any assertion that his counsel forced his decision not to testify.  He also has offered no proof that the discussions were in any way coercive.

In addition, Honor also has not established that his counsel's advice against testifying was unreasonable or prejudicial.  On federal habeas review, "the decision whether to put a Defendant

---

[90] ECF No. 12-6 at 107-10, Trial Transcript, 5/17/18.

[91] *Id.* at 110.

[92] *Id.* at 111-12.

on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985) (citing *Hollenbeck v. Estelle*, 672 F.2d 451, 454 (5th Cir. 1982)); *accord United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002); *Amos v. Cain*, No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); *Curtis v. Cain*, Bo. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008). However, a defendant's right to testify on his own behalf "may not be waived by counsel as a matter of trial strategy." *United States v. Mullins*, 315 F.3d 449, 454 (5th Cir. 2002). When the record shows that the defendant knew of his right to testify and wanted to testify, but simply acquiesced to his attorney's advice, the "only inquiry is whether that advice was sound trial strategy." *Id.* at 453-54.

In Honor's case, if he were to testify, he would have been exposed to cross-examination regarding his guilt and character, including his prior criminal history.[93] In addition, Honor does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided to benefit his defense.

Under these circumstances, it was reasonable for defense counsel to have determined that the prejudice posed by potential cross-examination outweighed any benefit that Honor's testimony might have provided to his defense. Honor has not demonstrated that any alleged advice by counsel to not testify was unreasonable or that the outcome of the trial would have been different but for his counsel's decision to rest the defense without his testimony.

---

[93] At sentencing, the Trial Court noted that Honor was previously afforded "both probation and parole on previous convictions, which were revoked due to the defendant's violations of the conditions of his probation and parole." ECF No. 12-7 at 49, Sentencing Transcript, 10/9/18. Additionally, Honor had four previous convictions, two for simple burglary and two for unauthorized use of a motor vehicle. ECF No. 12-8, Multiple Offender Written Reasons for Judgment, 1/13/20.

Honor has not demonstrated a deficiency or prejudice resulting from counsel's advice not to testify. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*. Honor is not entitled to relief on this claim.

**VII.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Maurice Honor's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[94]

New Orleans, Louisiana, this 25th day of September 2023.

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[94] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.